UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| NATHAN YOUNG, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:14-cv-00146-GZS |
| | ) | |
| TOWN OF BAR HARBOR, | ) | |
| | ) | |
| Defendant | ) | |

## RECOMMENDED DECISION

In this action, Plaintiff Nathan Young alleges, *inter alia*, that Defendant Town of Bar Harbor violated his right to due process and discriminated against him based on a disability when Defendant terminated his employment as chief of police.  The matter is before the Court on Defendant's Motion to Dismiss Counts I, V, VI, and VII (ECF No. 25) of Plaintiff's Amended Complaint (ECF No. 23), and on Plaintiff's Motion for Trial on the Facts (ECF No. 28).[1]

As explained below, following a review of the pleadings, and after consideration of the parties' arguments, the recommendation is that the Court grant in part and deny in part Defendant's Motion, and that the Court grant Plaintiff's Motion.

## DEFENDANT'S MOTION TO DISMISS

Through its Motion to Dismiss (ECF No. 25), Defendant challenges the sufficiency of Plaintiff's allegations in support of Count I (due process), Count V (ADA), Count VI (MHRA), and Count VII (FMLA).

---

[1]   The Court referred the motions for report and recommended decision.

## Background Facts

The facts set forth herein are derived from Plaintiff's Amended Complaint (ECF No. 23), which facts are deemed true when evaluating the Motion to Dismiss.[2]  *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

Plaintiff served as Defendant's Chief of Police from 1991 through January 2014.  (Am. Compl. ¶¶ 12, 40.)  In May 2013, Plaintiff made Defendant's Town Manager, Dana Reed, aware of the fact that he was an alcoholic during a conversation unrelated to Plaintiff's performance.  (*Id.* ¶ 14.)  In addition, in May 2013, as a result of unsubstantiated, non-work-related allegations against Plaintiff, several Town Councilors (Bowden, Eveland, Friedmann, Paradis, and St. Germain) expressed to the Town Manager that they wanted Plaintiff to be discharged.  (*Id.* ¶¶ 17-18.)

Prior to September 25, 2013, Plaintiff had "no negative documents" in his personnel file, which contained numerous documents praising Plaintiff's work as Chief of Police.  (*Id.* ¶ 15.)  On September 25, 2013, in the course of responding to a call, Officers Judson Cake and Larry Fickett questioned Plaintiff while he was off-duty as part of a "well-being check."  (*Id.* ¶¶ 19-20.)  The officers did not record the encounter on video equipment installed in their cruiser, did not perform a field-sobriety test, and found no alcohol or other intoxicants at the site.  (*Id.* ¶¶ 21, 24-25.)  According to Plaintiff, one of the officers, Larry Fickett, was upset with Plaintiff because Plaintiff had called him in to work despite Fickett's request to have the evening off.  (*Id.* ¶ 30.)  After the well-being check, Fickett wrote an incident report "asserting that he had seen things that his own partner noted he could not have seen."  (*Id.* ¶ 33.)

On October 1, 2013, as a result of an anonymous letter, Plaintiff was placed on administrative leave with pay by the Town Manager, pending investigation into the events of

---

[2]   The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

September 25, 2013.  When he placed Plaintiff on administrative leave, the Town Manager alluded to his May 2013 discussion with Plaintiff, at which point Plaintiff stated that the September 25, 2013, events were unrelated to his alcoholism.  (*Id.* ¶ 34.)  Thereafter, Town employees were directed not to speak with Plaintiff.  (*Id.* ¶ 35.)

Defendant hired an investigator to investigate the events of September 25, 2013.  (*Id.* ¶ 36.) The investigator did not record his interviews.  (*Id.* ¶ 37.)  The investigator determined that Plaintiff was intoxicated on the evening in question.  (*Id.* ¶ 38.)

The Town Manger provided Plaintiff with both notice and a hearing, and after the hearing, on January 22, 2014, the Town Manager terminated Plaintiff's employment.  (*Id.* ¶¶ 39-40.) Plaintiff alleges that the Town Manager had decided to terminate Plaintiff before the hearing.  (*Id.* ¶ 39.)  Plaintiff appealed the matter to the Town Council, which conducted a hearing on February 26, 2014.  (*Id.* ¶ 41.)

According to Plaintiff, "Upon information known to Chief Young, at least twelve [additional] executive sessions were held by the Town Council during Chief Young's suspension from employment where on several occasions Chief Young's employment and performance were discussed without notice to Chief Young and outside of his presence."  (*Id.* ¶ 43.)

Two days before the February 26 hearing, Councilor Robert Garland sent a letter to Council Chair Ruth Eveland expressing his concerns regarding the upcoming hearing.  (*Id.* ¶ 44.) Specifically, Councilor Garland asserted that he did not believe that he and the other councilors had enough time to read and analyze the investigative materials provided prior to the hearing, and that certain individual councilors had already made their decision regarding the final outcome of Chief Young's appeal.  (*Id.* ¶ 45.)

Before the hearing, the Council conducted an executive session with town counsel present. (*Id.* ¶ 42.)  At the hearing, Chair Eveland stated that the Council would make its decision based solely on the evidence presented before it.  (*Id.* ¶ 47.)

Plaintiff contends that the hearing revealed that numerous councilors had previously expressed to Town Manager Reed their desire for Plaintiff's removal from office.  The Council voted 5-2 to uphold the Town Manager's decision.  All five votes in favor of termination were cast by the five councilors who previously expressed to Town Manager Reed a desire to have Plaintiff removed.  (*Id.* ¶ 51.)

Plaintiff maintains that the record lacked evidence of any progressive discipline of Plaintiff prior to September 2013, or evidence of a prior loss of faith or trust or confidence by Town Manager Reed.  (*Id.* ¶ 53.)  According to Plaintiff, the Town Council adjudged the facts, as well as the law, in advance of the hearing.  (*Id.* ¶ 54.)  As alleged, the Town was unable to prove any intoxication by Plaintiff, or any threatening or intimidating actions by Plaintiff, yet based its decision on those two facts.  (*Id.* ¶ 58.)

After the hearing, Councilor Friedmann informed one of his constituents that there was more to the case than was presented at the hearing.  (*Id.* ¶ 55.)  Councilor Friedmann, who made the motion to uphold the termination, noted afterward that he believed "the officers mishandled the situation because they were young and inexperienced."  (*Id.* ¶ 56.)[3]

Plaintiff also contends that the Town's findings provided that "the Council considered only the witnesses and Record presented by the parties at the hearing" and that "neither party raised any objection to the ability of any council member to fairly hear the issues and evidence presented at

---

[3]   Plaintiff further alleges that, as the result of a request under the Freedom of Information Act, he learned that Councilor Friedmann communicated with the Town Manager on May 3, 2013, regarding concerns about Plaintiff. (Am. Compl. ¶ 57.)  Plaintiff does not relate the content of the communication.

the hearing," both of which statements were "patently false, as evidenced by the actions of members of the Town Council, the testimony of Town Manager Reed, the closing argument of Mr. Young's counsel (which outlined the prejudgment issue), and the deliberative comments of individual Councilors." (*Id.* ¶ 59.)

Plaintiff asserts multiple causes of action.  In Count I, Plaintiff asserts a claim for violation of due process under 42 U.S.C. § 1983.  As grounds for the violation, Plaintiff complains of the lack of an impartial decision maker.  (*Id.* ¶ 64.)  In Count II, Plaintiff seeks relief under Maine Rule of Civil Procedure 80B action. He maintains that his termination was arbitrary, capricious, an abuse of discretion, legally erroneous, and unsupported by substantial evidence.  (*Id.* ¶ 68.)  In Count III, Plaintiff asserts a claim for breach of his contract of employment, which contract required "just cause" for termination.  (*Id.* ¶ 70.)  In Count IV, Plaintiff alleges a violation of Maine's executive session law based on his alleged exclusion from executive sessions in which his employment was discussed.  (*Id.* ¶ 74.)  In Counts V and VI, Plaintiff alleges violations of the Americans with Disabilities Act (ADA) and the Maine Human Rights Act (MHRA) based on the denial of a reasonable accommodation and the decision to terminate his employment, both of which theories rely on Plaintiff's alcoholism as the relevant disability.  (*Id.* ¶¶ 79-81, 84.)  In Count VII, Plaintiff asserts a violation of the Family Medical Leave Act based on the denial of a return to work following leave approved under the FMLA on October 17, 2013, for treatment of alcohol abuse.  (*Id.* ¶¶ 88-89.)

**Discussion**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted."   In its assessment of the motion, a court must "assume the truth of

all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  To overcome the motion, a plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claims at issue.  *Id.*

## A.    Due Process (Count I)

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must allege facts capable of supporting a plausible finding that Defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States.  *Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013).  Plaintiff alleges a violation of the Fourteenth Amendment's Due Process Clause based on an allegation that Defendant, through its Town Council, was biased against him and did not afford him a neutral arbiter at his postdeprivation due process hearing.  (Am. Compl. ¶ 64.)  In his response to the Motion to Dismiss, Plaintiff argues that his allegations support both procedural and substantive due process theories.  (Opposition at 3-9, ECF No. 32.)

### 1.    Procedural due process

Defendant argues that "Plaintiff has failed to articulate a claim of disqualifying bias against the Town."  (Motion to Dismiss at 6.)  In Defendant's view, the allegations of bias are "nothing more than bold assertions of bias," and do not reasonably suggest that the Town Council based its decision on evidence other than the evidence that was presented at Plaintiff's post-termination hearing.  (*Id.* at 7-8.)  Additionally, Defendant argues that Plaintiff's Maine Rule of Civil Procedure Rule 80B claim is an adequate postdeprivation remedy, even if the allegations of bias are sufficient to support an inference that the decision-making process was influenced by personal bias.  (*Id.* at 9.)

When a person has a property right in continued government employment, he cannot be deprived of that right without due process. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985). The question of whether an employee has a property right in continued employment is a question of state law. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). However, the determination of due process, for purposes of a claim under § 1983, is a question of federal constitutional law. *Loudermill,* 470 U.S. at 541; *Vitek v. Jones,* 445 U.S. 480, 491 (1980). Defendant concedes that Plaintiff's interest in continued employment is a property interest to which the Due Process Clause applies. (Motion to Dismiss at 5.) The question thus is whether Plaintiff has alleged a due process violation.

"[D]ue process demands impartiality on the part of those who function in judicial or quasi-judicial capacities." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). *See also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). A "fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). "[O]ur system of law has always endeavored to prevent even the probability of unfairness." *Id.* "This applies to administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975). "In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* at 47. "Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him." *Id.* (footnotes collecting cases omitted). In comparison, the fact that the adjudicator may have "familiarity with the facts of a case," or "has taken a position, even in public, on a policy issue related to the dispute," would not support disqualification. *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976). Moreover, an appreciable degree

of bias is often inherent in employment-related due process hearings.  Indeed, it is acceptable for the supervisor to preside even though he or she is also responsible for instituting the disciplinary proceeding.  *Acosta-Sepulveda v. Hernandez-Purcell*, 889 F.2d 9, 12 (1st Cir. 1989) ("Contrary to the district court's premise, it is not required that a hearing be conducted before an impartial decisionmaker.  In fact, the hearing may be presided over by the employer himself.") (internal quotation marks and citation omitted); *Brasslett v. Cota*, 761 F.2d 827, 837 (1st Cir. 1985) (affirming finding of no unconstitutional bias where supervisor who initiated termination was also the final decision maker, in the absence of a "pecuniary interest in the outcome of the plaintiff's appeal" or "animosity … as a result of personal criticism or attacks").

The facts alleged by Plaintiff reflect that he had two hearings before Defendant.  The first hearing, provided by the Town Manager, consisted of the so-called *Loudermill* procedure, *i.e.*, notice of the charge and the evidence it was based on, and an opportunity to respond.  470 U.S. at 546.  "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."  *Id.*  Plaintiff's allegations of bias on the part of the Town Manager do not raise the disqualifying bias that would support a due process claim based on a predeprivation procedural violation.  Instead, Plaintiff simply raises the generic bias that might exist in most every case in which a supervisor asserts, allegedly without justification, that grounds exist for the termination of an employee's employment.  Because Plaintiff's allegations reveal that he received the process required by *Loudermill*, the assertions that the Town Manager was predisposed to terminate his employment based on "unsubstantiated, non-work-related allegations" and that the Town Manager "had already made up his mind" (Am. Compl. ¶¶ 17, 39) do not state a constitutional claim.[4]  *See Chmielinski*

___
[4] Plaintiff's § 1983 claim appears to be focused on the alleged bias of the Town Council rather than the Town Manager. (Am. Compl. ¶¶ 62-63.)  However, because Plaintiff incorporates all of his factual allegations into Count I and alleges

*v. Massachusetts*, 513 F.3d 309, 313 (1st Cir. 2008) (affirming dismissal of due process claim involving allegations of bias and prejudgment on the part of a hearing officer and a prohibition against all contact between the plaintiff and his coworkers);[5] *Farris v. Poore*, 841 F. Supp. 2d 436, 441 (D. Me. 2012) (involving circumstances in which pretermination decision maker was the supervisor, who also supplied evidence as a witness, and had encouraged employee to resign ahead of the hearing).

After the Town Manager terminated Plaintiff's employment, Plaintiff requested and obtained a hearing before the Town Council.   In the hearing, Plaintiff had the opportunity to challenge the Town Manager's "for cause" termination decision.  Plaintiff does not assert that the proceeding was deficient in terms of process (he was afforded an evidentiary hearing and was represented by counsel).  Rather, Plaintiff alleges that the proceeding was pointless because five of the seven council members wanted his employment to end regardless of the significance of or the merit of the charge against him.[6]  Plaintiff, however, has not alleged that any councilor had a pecuniary interest that would be impacted by the outcome, or was involved in a prior abusive or even acrimonious relationship with him, which bases are the only two circumstances that the Supreme Court has recognized as *constitutional* claims of "disqualifying" bias.  Plaintiff simply alleges that a majority of the Town Council wanted him to be fired before the hearing for undisclosed reasons.

---

that "Defendant Town's aforementioned conduct" violated his rights, this Recommended Decision includes a discussion concerning the alleged bias of the Town Manager.

[5] In *Chmielinski*, the predeprivation hearing process was more elaborate than the minimum required by *Loudermill*, and there was no evidentiary presentation associated with the plaintiff's postdeprivation appeal process.  *Chmielinski*, 513 F.3d at 313.

[6] Plaintiff maintains the Council's prehearing determination is made apparent by the lack of substantial evidence in support of the Council's decision to uphold his termination; by a prohibition against communication between Plaintiff and municipal employees, which undermined his defense; and by multiple executive sessions in which the charge against him was discussed by the Council in his absence.

Even assuming, therefore, that the allegations raise a plausible inference that some type of personal bias might have influenced some of the Council members to vote to uphold the termination decision, the issue is whether Plaintiff has asserted facts that could plausibly support a *constitutional* claim even if Plaintiff has not alleged that the councilors had a pecuniary interest in the matter or had a prior acrimonious relationship with Plaintiff.    Review of the relevant authority reveals that Plaintiff's allegations of bias based on council members' pre-existing views of Plaintiff, which bias allegedly caused the members to prejudge Plaintiff's appeal, do not rise to the level of a constitutional deprivation.   That is, a general institutional bias is not disqualifying for purposes of a *constitutional* procedural due process inquiry.  *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986) ("The Court has recognized that not '[a]ll questions of judicial qualification ... involve constitutional validity.  Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion.") (quoting *Tumey v. Ohio,* 273 U.S. 510, 523 (1927));  *FTC v. Cement Inst.,* 333 U.S. 683, 702 (1948) ("[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level"). Plaintiff, therefore, has not stated a personal bias claim that implicates the Constitution.

Plaintiff also appears to contend that the postdeprivation administrative process was subverted by prejudgment, unlawful executive sessions, and the consideration of information beyond what was presented at the postdeprivation hearing.   To determine whether Plaintiff's allegations generate a constitutional claim, a court must assess whether the alleged wrongful conduct can be characterized as a "random and unauthorized" act.  As the First Circuit and this Court have recognized, under the *Parratt – Hudson* doctrine,[7] when the deprivation of a property

---

[7] *Hudson v. Palmer,* 468 U.S. 517 (1984); *Parratt v. Taylor,* 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams,* 474 U.S. 327 (1986).

interest is the result of a "random and unauthorized" act of state officials, the due process issue is whether the postdeprivation remedy provided by the state is adequate. *Hadfield v. McDonough,* 407 F.3d 11, 19–20 (1st Cir. 2005); *O'Neill v. Baker,* 210 F.3d 41, 50 (1st Cir. 2000); *Farris v. Poore*, 841 F. Supp. 2d 436, 439-40 (D. Me. 2012); *Learnard v. Inhabitants of Town of Van Buren*, 182 F. Supp. 2d 115, 122 (D. Me. 2002).

Conduct is "'random and unauthorized' within the meaning of *Parratt – Hudson* when the challenged state action is a flaw in the official's conduct rather than a flaw in the state law itself." *Hadfield*, 407 F.3d at 20.  That is, "[t]here is no federal procedural due process claim where 'the denial of process was caused by the random and unauthorized conduct of government officials and where the state has provided adequate post-deprivation remedies to correct the officials' random and unauthorized acts.'" *Farris*, 841 F. Supp. 2d at 440 (quoting, *Hadfield*, 407 F.3d at 19-20)

Here, Plaintiff does not allege a deficiency in the process provided by state law. [8]  Instead, Plaintiff complains about the execution of the process (*i.e.*, unlawful executive sessions, prejudging the matter, consideration of information outside the official record).  In other words, Plaintiff alleges "a flaw in the official's conduct rather than a flaw in the state law itself." *Hadfield*, 407 F.3d at 20.  The issue, therefore, is whether the remedy afforded by state law is adequate.  As explained by this Court in *Farris* and *Learnard*, Maine Rule of Civil Procedure 80B, pursuant to which Plaintiff has asserted a claim in this action, provides an adequate postdeprivation remedy,

---

[8] The process afforded is governed by state law.  Under state law, "Police officers, including chief of police, may be removed for cause after notice and hearing."  30-A M.R.S. § 2671(1).  Additionally, the Law Court has held that pursuant to state law "a proceeding to remove an incumbent from public office is judicial in nature, and that municipal officials in such removal proceedings must assume the role of a deliberate, unprejudiced tribunal and provide the incumbent with a full and fair hearing."  *Frye v. Inhabitants of Town of Cumberland*, 464 A.2d 195, 199 (Me. 1983) (quoting *Sevigny v. City of Biddeford*, 344 A.2d 34, 40 (Me. 1975)).  State law also prohibits an administrative adjudicator from reaching a decision on the basis of information outside of the administrative record.  *N. Atl. Sec., LLC v. Office of Sec.*, 2014 ME 67, ¶ 45, 92 A.3d 335, 347; *Pub. Utilities Comm'n v. Cole's Exp.*, 153 Me. 487, 498-500, 138 A.2d 466, 472-73 (1958).  State law is also the source of Plaintiff's allegation concerning the misuse of executive sessions.  1 M.R.S. § 405(6)(A)(2).

even if the scope of potential relief is not as expansive as the scope of relief available under §
1983. *Farris*, 841 F. Supp. 2d at 440-41 & n.5; *Learnard*, 182 F. Supp. 2d at 125-26. Accordingly,
Plaintiff has not asserted a constitution-based procedural due process claim. [9]

### 2. *Substantive due process*

Defendant argues that Plaintiff's allegations do not satisfy the conscience-shocking level
required to state a plausible substantive due process claim. (Motion to Dismiss at 5 n.1.) Plaintiff
maintains that because the administrative decision "was so devoid of any reasonable factual basis,
it rises to the requisite level of 'conscious shocking' and 'outrageous'." (Opposition at 5.)

The First Circuit has "recognized there may be substantive due process theories of recovery
which turn on whether the alleged misconduct 'shocks the conscience.'" *Marrero-Rodriguez v.
Mun. of San Juan*, 677 F.3d 497, 501 (1st Cir. 2012) (citation and quotation marks omitted)
(recognizing claim where supervisory police officer fatally shot plaintiff during training exercises
while stating that he was demonstrating the proper way to handle a subdued suspect). Simply
stated, given that the First Circuit does not recognize general personal bias as a procedural due
process violation, one can reasonably conclude that Defendant's conduct, including the alleged
deficiencies in the process, while potentially actionable under other theories of recovery, does not
"shock the conscience." *See, e.g.*, *Farris*, 841 F. Supp. 2d at 442; *Learnard*, 164 F. Supp. 2d at
41 n.2 (D. Me. 2001). *See also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("conduct
intended to injure in some way unjustifiable by any government interest is the sort of official action
most likely to rise to the conscience-shocking level"); *Daniels v. Williams*, 474 U.S. 327, 332

---

[9] The fact that Plaintiff has not stated a cognizable constitutional claim does not mean that Plaintiff cannot challenge
the neutrality of the decision maker. Plaintiff can challenge the neutrality of the Town Council in the context of his
claim under M.R. Civ. P. 80B. Indeed, I recommend below that the Court grant Plaintiff's request for a trial on the
facts in part to permit Plaintiff the opportunity to develop that argument.

(1986) ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."); *Santiago de Castro v. Morales Medina*, 943 F.2d 129, 131 (1st Cir. 1991) (quoting with approval *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229 (1985) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972), substantive due process rights are created only by the Constitution.") (Powell, J., concurring)); *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990) ("[B]efore a constitutional infringement occurs, state action must *in and of itself* be egregiously unacceptable, outrageous, or conscience-shocking.") (emphasis in original).   Defendant's alleged conduct, therefore, does not give rise to a substantive due process claim.

**B.     Disability Discrimination (Counts V and VI)**

Plaintiff alleges that Defendant violated his rights under the Americans with Disabilities Act (count V) and the Maine Human Rights Act (count VI) because although Plaintiff was disabled by alcoholism, Defendant failed to provide a reasonable accommodation for Plaintiff's alcohol dependency, and terminated Plaintiff's employment because of his alcoholism.   (Am. Compl. ¶¶ 80-81.)   Defendant contends that Plaintiff has not alleged an actionable claim because he has not alleged that he was substantially limited in one or more major life activities, has not asserted that the Council had any knowledge of his alcoholism, and has not alleged the accommodation that he requested from Defendant.   (Motion to Dismiss at 12-14.)

*1.     Discriminatory discharge from employment*

To establish a claim of disability discrimination, Plaintiff must demonstrate:   (1) that he has an impairment that qualifies as a "disability" under the applicable statutory definition; (2) that

13

he could perform the essential functions of the job, with or without reasonable accommodation; and (3) that Defendant took adverse action against him, in whole or in part, because of his disability. *Roman-Oliveras v. Puerto Rico Elec. Power Auth.,* 655 F.3d 43, 48 (1st Cir. 2011) (ADA); *Daniels v. Narraguagus Bay Health Care Facility,* 2012 ME 80, ¶ 14, 45 A.3d 722, 726 (MHRA). Defendant challenges the sufficiency of the allegations regarding the first element.

"An individual is disabled for purposes of the ADA if he (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Roman-Oliveras*, 655 F.3d at 48. Only the first two methods of showing disability require allegations of an actual present or past disability substantially impacting a major life activity. *Id.* at 48-49. The third method of proof, showing that one was "regarded as" disabled, does not. *Id.* at 49. To prove a "regarded-as" claim, a plaintiff ordinarily must show either that the employer mistakenly believed that he had a physical impairment that substantially limited one or more major life activities, or mistakenly believed that an actual, non-limiting impairment substantially limited one or more major life activities. *Id.* at 49.

Plaintiff does not assert a major life activity that the Town Council believed was substantially limited by his alcoholism. Plaintiff nevertheless maintains that the Council learned of his alcoholism from the Town Manager in May 2013 and "amplified the September 25, 2013 incident into a terminable offense related to [Plaintiff's] alcoholism." (Opposition at 10.) Presumably, therefore, Plaintiff's Amended Complaint is intended to suggest that Plaintiff was "regarded as" substantially limited in the major life activity of working.

To state a claim when the major life activity is work, a plaintiff must assert not only that the employer thought that the plaintiff was substantially limited in his ability to do his own job,

14

but also that the employer regarded him as substantially limited in his ability to perform a class of jobs or a broad range of jobs in various classes as compared with the average person with similar training, skills, and abilities. *Roman-Oliveras*, 655 F.3d at 49. Viewed in the light most favorable to Plaintiff, and considering that Federal Rule of Civil Procedure 8 requires that a plaintiff simply provide notice to the defendant of the nature and bases of the claim, *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 65 (1st Cir. 2004), Plaintiff's allegations are sufficient to support an inference that Defendant regarded Plaintiff as unsuited to supervisory[10] law enforcement work based on a disability.

### 2.     *Failure to accommodate*

The failure to provide a reasonable accommodation for the known physical or mental limitations of an otherwise qualified individual with a disability is a form of discrimination under both the ADA and the MHRA. 42 U.S.C. § 12112(b)(5)(A); 5 M.R.S. § 4553(2)(E). To prove a failure to accommodate, Plaintiff must show that he had an impairment that qualified as a "disability" under the applicable statutory definition; that he was able to perform the essential functions of the job with or without a reasonable accommodation; that the employer knew that Plaintiff had disability-related physical or mental limitations and did not reasonably accommodate the limitations; and that the failure to accommodate adversely affected the terms, conditions, or privileges of Plaintiff's employment. *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 664 (1st Cir. 2010); *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007). "Ordinarily, the employer's duty to accommodate is triggered by a request from the employee."

---

[10]    Supervisory duty entails a class of work activity. *See Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 304 (4th Cir. 1998); *Zakaras v. United Airlines, Inc.*, 121 F. Supp. 2d 1196, 1217 (N.D. Ill. 2000).

*Freadman*, 484 F.3d at 102.  The request should be reasonably specific and should explain the link between the requested accommodation and the disability.  *Id.*

Defendant argues that dismissal is warranted because Plaintiff has failed to assert (a) that he made a direct request for accommodation of a disability, (b) the nature of the necessary accommodation, (c) how the accommodation would be related to the disability, or (d) why the accommodation would be reasonable.  (Motion to Dismiss at 14.)  In the Amended Complaint, Plaintiff alleges that the Council considered Plaintiff to be an alcoholic; that following the September 25, 2013, incident, the Town Manager placed Plaintiff on administrative leave with pay pending an investigation; that Plaintiff requested and was granted family medical leave in October 2013 for inpatient treatment for alcohol abuse; that the Town Manager fired Plaintiff in January 2014; and that the Council upheld the termination in February 2014.

Significantly, Plaintiff has not alleged that he requested an accommodation either before the September 2013 incident or at any point during the due process proceedings.  Additionally, Plaintiff has not alleged that he actually needed an accommodation to enable him to perform the duties of the job.  Instead, Plaintiff argues that the Council, with the information of which it was aware, should have known that Plaintiff needed an accommodation related to his alcoholism and that because of the need Plaintiff's termination was not justified.  (*Id.*)

While Plaintiff has alleged that he suffered from alcohol dependency, and that members of the Council were aware that he might have an issue with alcohol, Plaintiff has failed to allege sufficient facts to support a failure to accommodate claim.  Importantly, Plaintiff has not alleged that he was unable to perform the employment duties, or that he requested an accommodation. Plaintiff has thus failed to alleged facts to support the necessary elements of an accommodation claim.  Dismissal of Plaintiff's failure to accommodate claim, therefore, is appropriate.

### C.        Family and Medical Leave Act (FMLA) (Count VII)

Under FMLA, an employee is entitled to twelve weeks of leave during any twelve-month period for, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  FMLA makes it unlawful for an employer to interfere with these rights and it also makes it unlawful for an employer to interfere with FMLA proceedings.  *Id.* § 2615(a), (b).

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by FMLA]."  *Id.* § 2615(a)(1) (the "interference with rights" provision).  An employer, for instance, cannot interfere with an employee's right "to return to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority."  *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998) (citing 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.100(c) (1997)).  FMLA also prohibits an employer from discriminating against an employee because the employee exercised his FMLA rights.  *Id.* at 159-60.  Consequently, it is unlawful for an employer to "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary action."  *Id.* at 160 (quoting 29 C.F.R. § 825.220 (2013)).

Plaintiff alleges that because he took FMLA leave for alcoholism, he was denied the opportunity to return to work, and in fact was terminated from his employment.  (Am. Compl. ¶¶ 88, 92.)  Defendant's arguments, *i.e.*, that Defendant terminated Plaintiff's employment for reasons unrelated to FMLA, and that FMLA retaliation as a cause is inconsistent with Plaintiff's claim that the Council's decision was predetermined, address the substantive merits of Plaintiff's claim, and do not support dismissal at this stage of the proceedings.  Indeed, as to the retaliation discharge

claim, while proof of causation is subject to the familiar *McDonnell Douglas*[11] burden-shifting "framework for analyzing the tricky issue of motivation" at summary judgment, *Hodgens*, 144 F.3d at 160, Rule 8 does not require Plaintiff to make a prima facie showing of liability in his pleadings. *Hernandez*, 367 F.3d at 65. Additionally, given Defendant's concession that Plaintiff was entitled to FMLA leave during a period of paid administrative leave, Plaintiff has successfully pled the required elements of a claim for interference with the right to be returned to work following FMLA leave.

### PLAINTIFF'S MOTION FOR TRIAL ON THE FACTS

Through his Motion for Trial on the Facts (ECF No. 28), Plaintiff requests the opportunity to supplement the administrative record with evidence relevant to his hearing before the Town Council. Pursuant to Maine Rule of Civil Procedure 80B, Plaintiff must present the Court with an offer of proof that includes a detailed statement of facts that would enable the Court "to make a proper determination as to whether any trial of the facts … is appropriate under this rule and if so to what extent." M.R. Civ. P. 80B(d).

A trial of the facts is potentially appropriate "to permit the introduction of evidence of bias that does not appear in the administrative record." *Lane Const. Corp. v. Town of Washington*, 2008 ME 45, ¶ 29, 942 A.2d 1202, 1211. "For example, the complainant may augment the record if there are claims of ex parte communication or bias alleged, with sufficient particularity, to have had an effect on the fairness of the governmental proceedings." *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237, 241. However, before a court will consider evidence of the mental processes of administrative decision makers, the moving party must make a prima facie

---

[11]   *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–06 (1973).

showing of misconduct.  *Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990).  Vague and unsubstantiated allegations will not suffice.  *Id.*

### Plaintiff's Offer of Proof

In an affidavit (ECF No. 29-1), Plaintiff attests that following the Council hearing on the termination of Plaintiff's employment, Councilor Walsh informed him that two days before the hearing, Councilor Garland sent a letter to Council Chair Eveland expressing concern that the Council did not have enough time to read and analyze the investigative materials provided prior to the hearing and that certain individual councilors had already made their decision.  (*Id.* ¶ 8.)  In his letter (ECF No. 29-2), Councilor Walsh asserted that the Council had conducted several executive sessions during which the matter was discussed, that he believed "individual Councilors seemingly hav[e] already made their decision," and that he wished that the councilors had more time for reflection upon the matter.

Plaintiff also relies on the affidavit of a resident of Bar Harbor who attended the council hearing (ECF No. 29-4).  In her affidavit, the affiant states that when she expressed to Councilor Friedmann her concern about the vote given the lack of evidence, Mr. Friedmann responded that "there was so much more."  (*Id.* ¶ 8.)

Finally, Plaintiff has provided a letter authored by Assistant Attorney General Brenda Kielty addressed to Mr. J.T. Burton and Interim Town Manager James Ashe (a successor to Town Manager Dana Reed), dated May 29, 2014 (ECF No. 29-5), which letter Ms. Kielty wrote after reviewing Mr. Burton's concern about the Council's use of executive sessions to discuss personnel matters.  Without specifically referencing Plaintiff's situation, Ms. Kielty advised that executive sessions are appropriate "only when there is a reasonable expectation that public discussion could damage a person's reputation or violate that person's right to privacy," and that the person in

question "has a right to be present during the executive session and may request in writing that the investigation or hearing be held in open session." (*Id.* at 1-2.)

## Discussion

Under Maine law, an administrative decision maker must make a determination based on the administrative record and not on extraneous information that does not appear on the record. *City of Biddeford v. Adams*, 1999 ME 49, ¶ 10, 727 A.2d 346, 349; *see also* M.R. Civ. P. 80B(f) (limiting judicial review to "the record of the proceedings before the governmental agency" except pursuant to Rule 80B(d)). The alleged use of multiple executive sessions evidently without notice to Plaintiff, a council member's expressed concern that the matter was decided before the hearing, and another councilor's alleged suggestion that there "was so much more" information than the evidence presented at the hearing, constitute a prima facie showing that the Council considered evidence outside the record and, therefore, a prima facie showing of bias. Plaintiff thus has demonstrated that additional evidence regarding the proceeding before the Town Council is warranted.

### CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court (1) find that Plaintiff has stated a claim under the ADA and the MHRA for disability discrimination and for violation of FMLA's return to work right and its prohibition against FMLA-related discrimination; (2) find that Plaintiff has failed to state a claim under § 1983 for the denial of due process; (3) find that Plaintiff has failed to state a claim under the ADA or the MHRA for the failure to accommodate; and (4) find that additional evidence on Plaintiff's Rule 80B action is warranted.

Accordingly, the recommendation is that the Court grant in part Defendant's Motion to Dismiss (ECF No. 25). In particular, the recommendation is that the Court (a) dismiss Count I of

the Amended Complaint (due process), and (b) dismiss Plaintiff's failure to accommodate claim asserted in Count V (ADA) and Count VI (MHRA).[12]  The recommendation is that the Court otherwise deny the motion.  Finally, the recommendation is that the Court grant Plaintiff's Motion for Trial on the Facts (ECF No. 28).[13]

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 23rd day of April, 2015.

---

[12] If the Court adopts the recommendation, Plaintiff would proceed on the disability discrimination claim asserted in Counts V and VI.

[13] Upon granting a Rule 80B(d) motion, a court "shall issue an appropriate order specifying the future course of proceedings."  M.R. Civ. P. 80B(d).  In the event the Court adopts the recommendation to grant the motion, I also recommend that the Court schedule a conference to determine the future course of the proceedings.