UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| NATHAN YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket no. 1:14-cv-00146-GZS |
| | ) | |
| TOWN OF BAR HARBOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court is the motion for summary judgment filed by Defendant Town of Bar Harbor (ECF No. 55) (the "Motion for Summary Judgment").  For the reasons explained herein, the Court GRANTS IN PART Defendant's Motion for Summary Judgment and DISMISSES the remaining claims WITHOUT PREJUDICE.

I.     LEGAL STANDARD

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law."

Nereida–Gonzalez v. Tirado–Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e).  "Mere allegations, or conjecture unsupported in the record, are insufficient."  Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera–Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation." (citations omitted)).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

## II.    FACTUAL BACKGROUND

For the purposes of this Order, the Court draws the factual narrative that follows from the stipulation of facts agreed to by the parties (ECF No. 53) ("SOF"), the statement of material facts

provided by Defendant Town of Bar Harbor (the "Town" or "Defendant") (ECF No. 56) ("DSMF"), the statement of material facts provided by Plaintiff Nathan Young ("Young" or "Plaintiff"), which includes responses to Defendant's statement of material facts (ECF No. 60) ("PSMF") and Defendant's responses to Plaintiff's statement of material facts (ECF No. 64) ("DRSMF").  However, the Court limits its factual recitation to those facts that are relevant to the discussion section that follows.

### A.  Young's Employment with the Town of Bar Harbor

Young was the Chief of Police of the Town for 23 years.  (SOF at PageID # 973.)  Young most recently served as Chief of Police pursuant to an employment agreement with the Town that commenced on July 1, 2012, with a stated three-year term (the "Employment Agreement").  (ECF No. 52-1 at PageID # 435.)  Under the Employment Agreement, the Town was permitted to terminate Young's employment only for cause, in compliance with the requirements of 30-A M.R.S.A. § 2671(1).  (Id. at PageID # 436.)

In February of 2013, Young spoke with the Town Manager, Dana Reed ("Reed") and self-reported a problem with excessive drinking.  In response, Reed explained that certain employee assistance plan ("EAP") services were available to Young.  (DRSMF at PageID # 1116.)  The parties agree that at no time while he served as Chief of Police was Young's ability to perform his duties affected or impaired by his consumption of alcohol.  (SOF at PageID # 973.)

In the spring of 2013, a number of the members of the Town's council (the "Town Council") expressed to Reed that they were concerned about Young's behavior and problems in his personal life.  (PSMF at PageID # 1084; DRSMF at PageID # 1116.)  According to Reed, the concerns raised by members of the Town Council at this time related to rumors about a domestic disturbance involving Young and his wife.  (Reed Dep. (ECF No. 52-2) at PageID # 470.)  The

five members of the Town Council who told Reed about concerns or rumors they had heard about Young later voted to uphold Reed's decision to terminate Young's employment.  (PSMF at PageID # 1087; DRSMF at PageID # 1118.)  In May of 2013, Town Council member David Bowden allegedly told Christopher Walsh, then a member of the Town Council, that Young needed to go, in connection with allegations that Young had engaged in an extramarital affair with another employee of the Town.  (DRSMF at PageID #s 1120-21.)  Also in May of 2013, Reed allegedly told Young he had enough votes on the Town Council to remove Young.  (Young Dep. (ECF No. 52-1) at PageID # 325.)

Walsh has stated that Young told him in May of 2013 that he was an alcoholic, but that the conversation concerned Young's off-duty drinking, and not his work and job performance.  (Walsh Dep. (ECF No. 52-4) at PageID #s 802-03.)  According to Walsh, he told Reed about this conversation.[1]  (Id. at PageID # 803.)  To the contrary, Young has stated that he never described himself as an alcoholic to anyone prior to October of 2013.  (DRSMF at PageID # 1119.)  That same month, Reed spoke with Jonathan Goodman, an attorney in private practice in Maine, concerning a possible investigation that ultimately did not occur.  (PSMF at PageID # 1088.)  Reed stated that the contact with Goodman at this time concerned the alleged domestic disturbance incident involving Young.  (Reed Dep. (ECF No. 52-2) at PageID # 468; Tr. Hearing in re: Termination of Young (ECF No. 52-3) at PageID # 574.)

On September 25, 2013, at approximately 11:30 P.M., the Town's police department received a call reporting that a vehicle was parked in the parking lot of Town Hill Market in the Town, and that there appeared to be a man slumped over in the driver's seat of the vehicle.  (SOF at PageID #s 973-74.)  Officer Judson Cake ("Cake") and Officer Larry Fickett ("Fickett"), each

---

[1] Reed specifically denies that this conversation with Walsh occurred.  (Reed Dep. (ECF No. 52-2) at PageID # 489.)

police officers of the Town's police department, were patrolling together and responded to the call. (SOF at PageID # 974.)  Cake and Fickett observed a vehicle in the parking lot, which Fickett recognized as belonging to Young.  (Id.)

Cake and Fickett both exited their car and approached Young's vehicle.[2]  (PSMF at PageID # 1065.)  Cake approached the driver's side window, while Fickett stayed towards the back of the truck.  (Id.)  Cake knocked on the driver's side window more than once before Young responded to the knocks and opened the door.  (Id.)  Cake asked Young if he was "okay," and Young stated that he was.  (Id. at PageID # 1066.)  Cake observed that Young appeared to be waking up.  (Id.)  Cake believed that he smelled alcohol when Young opened his car door.  (Id.)  Cake concluded, based on his observations, that Young had been drinking and was intoxicated.  (Id. at PageID # 1069.)

When Cake identified Fickett as the other on-duty officer present, Young made a negative remark about Fickett.  (Id. at PageID # 1066-67.)  Cake repeatedly requested that Fickett approach the driver's side door to interact with Young, and he eventually did so.  (Id. at PageID # 1067.)  Fickett smelled alcohol as he approached the driver's side door.  (Id.; Fickett Dep. (ECF No. 52-8) at PageID # 881.)  Neither Cake nor Fickett observed physical evidence of alcohol consumption external to Young's person, such as open alcoholic beverage containers.  (Id. at PageID #s 1067-68.)  Neither Cake nor Fickett observed Young operating his vehicle, and neither performed a field sobriety test on Young.  (Id. at PageID #s 1067, 1069.)  After an interaction with Young spanning about three or four minutes, Cake and Fickett departed in their police vehicle.  (Id.)

---

[2] The Court recognizes that the parties rely upon the statements of Young, Cake, and Fickett to construct differing narratives of the precise interaction that occurred when Cake and Fickett arrived at the Town Hill Market parking lot. Nonetheless, the general contours of the event are undisputed, and the Court draws its recitation from those undisputed facts and other material facts construed in the light most favorable to Young, given Plaintiff's Statements of Material Fact.

After leaving the scene, Fickett called the Town's police station and spoke with Officer Eric McLaughlin.  (SOF at PageID # 974.)  After conversing with Officer McLaughlin, Cake and Fickett returned to the Town Hill Market parking lot, but observed that Young's vehicle was no longer in the parking lot.  (Id.)

**B.  Investigation of Young and Termination of Young's Employment**

On October 1, 2013, Reed met with Young and informed him that Young would be placed on administrative leave, pending an investigation into the incident at the Town Hill Market parking lot.  (SOF at PageID # 975.)  Reed then retained Jonathan Goodman to conduct the investigation. (Id.)  Young subsequently sought medical leave pursuant to the Family Medical Leave Act, 29 U.S.C.A. § 2601 *et. seq*. (the "FMLA"), in order to obtain in-patient treatment for alcohol abuse, and the Town approved his request.  (Id.)  Reed then informed the Town Council, in an executive session, that Young was on FMLA leave.  (Id.)  Former Town Council member Walsh contends that Reed said to the Town Council "that [Young] figured out a way to get another paycheck and that he was going to be holding this up." (Walsh Dep. (ECF No. 52-4) at PageID # 799.)  Walsh further stated that Town Council members Paradis, St. Germain, and Bowden indicated that Young was dragging out the investigation process.  (Id. at PageID # 807.)  Reed has stated that any such comments concerned the fact that Young had allegedly not contacted Reed after returning from in-patient treatment or immediately after his FMLA leave concluded.  (DRSMF at PageID # 1132.) During the duration of Young's FMLA leave, which concluded on November 29, 2013, he remained on administrative leave from his position as Chief of Police.

On December 24, 2013, attorney Goodman issued a report on his investigation.  (SOF at PageID # 975.)  Goodman concluded that Young had been intoxicated at the time that he interacted with Cake and Fickett on September 25, 2013 and that Young was "hostile toward the officers,

which dissuaded them from taking appropriate action . . . ."  (Goodman Dep. (ECF No. 52-10) at PageID # 962.)  On January 15, 2014, Reed sent Young a copy of the report and informed him that based on the contents of the report, and on Young's conduct during his administrative leave, he was contemplating taking disciplinary action against Young, up to and including a potential termination of Young's employment.  (SOF at PageID #s 975-76.)  Following a meeting with Young on January 20, 2014, Reed terminated Young's employment on January 22, 2014 and advised him of his right to appeal the termination to the Town Council.  (SOF at PageID # 976.)

Young appealed the termination decision and requested a public hearing.  (Id.)  The Town Council held a public hearing on February 26, 2014.  (Id.)  At the conclusion of the hearing, and after deliberating, the Town Council voted 5-2 to affirm Reed's decision to terminate Young's employment.  (Id.)

### C.  The Present Dispute

Young brought suit against Defendant by filing a complaint in the Superior Court of the State of Maine, Hancock County.  (ECF No. 3-3.)  After Defendant removed the case to this Court on April 8, 2014, Plaintiff amended his complaint (ECF No. 23) (the "Complaint"), ultimately asserting seven claims against Defendant.  Defendant brought a motion to dismiss certain of Plaintiff's claims, and this Court granted that motion in part and denied it in part.  As a result of the order on the motion to dismiss (ECF No. 39), Count I and one of the claims asserted under Count V of the Complaint have been dismissed.  Defendant has now moved for summary judgment on the remaining six counts of the Complaint.

### III.    DISCUSSION

The Court first evaluates Plaintiff's claims arising under federal law: his claim for disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 *et. seq.*

7

(the "ADA") (Count V) and his claim for a violation of the FMLA (Count VII).[3]  Finally, following the determination that Defendant's Motion for Summary Judgment must be granted as to Counts V-VII, the Court briefly explains its decision to dismiss Plaintiff's remaining state law claims without prejudice.

### A.  ADA Disability Discrimination Claim

A claim for disability discrimination under the ADA requires that a plaintiff show that "he (1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or part on his disability."  Ramos-Schevarria v. Pichis, Inc., 659 F.3d 182, 186 (1st Cir. 2011).  In its Motion for Summary Judgment, the Town first argues that Young was not disabled under the ADA.  The Town further argues that, even if Young's alcoholism qualified as a disability on this record, the Town did not take an adverse employment action against Young based on any such disability.  The Court concludes that Defendant is correct that Plaintiff was not disabled under the ADA, and Defendant is therefore entitled to summary judgment on Count V.  Even if Plaintiff's alcoholism could be shown to be a disability, Defendant would still prevail on Count V because it did not discriminate against Plaintiff based on that disability.

### 1.  Plaintiff Did Not Suffer from a Disability Under the ADA

Plaintiff bears the burden of proving that his alcoholism[4] constitutes a disability under the ADA.  To satisfy this first element of the cause of action for disability discrimination, a plaintiff

---

[3] As briefly explained *infra* notes 11 & 12, the analysis of these federal claims necessarily dictates the result of Young's related MHRA claim (Count VI).

[4] Defendant has apparently assumed that Plaintiff was actually an alcoholic when the events giving rise to this dispute occurred.  (Mot. Summ. J. at PageID # 984.)  Therefore, the Court likewise accepts Plaintiff's contention that he was an alcoholic for the purposes of this Order.

must show "(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Young alleges that he was actually disabled and argues that his disability resulted from his alcoholism, an impairment that substantially limited at least one major life activity.  (Pl.'s Opp. Def.'s Motion Summ. J. (ECF No. 59) ("Pl.'s Opp.") at PageID # 1059.)  The Complaint further asserts that "Defendant regarded as, perceived, or treated Plaintiff as disabled" (Compl. ¶ 80), and Plaintiff argues in connection with the pending motion that the Town had a "record of his disability."  (Pl.'s Opp. at PageID # 1059.)  Giving Plaintiff the full benefit of each basis that he has identified,[5] the Court considers each of the three statutory bases by which Plaintiff might show that he was disabled.

### a. Impairment Substantially Limiting a Major Life Activity

Plaintiff must show that his condition constituted an impairment, that the life activity or activities Plaintiff asserts have been substantially limited constitute "major life activities," and that such life activity or life activities have in fact been substantially limited.  Bragdon v. Abbott, 524 U.S. 624, 631 (1998).  The First Circuit has made clear that "[t]here is no question that alcoholism is an impairment . . . under the ADA."  Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1167 (1st Cir. 2002).

Proceeding to the second point of inquiry, the Court considers whether Plaintiff has identified in the record an impairment of major life activities, such as "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching,

---

[5] Plaintiff only alleged that he had an actual disability and that his employer regarded him as having a disability in the Complaint, but did not allege that there was a record of his disability.  (Compl. ¶¶ 77-81.)  Furthermore, this Court, in denying Defendant's motion to dismiss Plaintiff's disability discrimination claim (ECF No. 39, affirming the Recommended Decision of the Magistrate Judge, ECF No. 38), ultimately presumed that the Complaint set forth only a claim for disability discrimination based on Plaintiff's assertion that Defendant regarded Plaintiff as disabled. Nonetheless, the Court separately analyzes all three bases on which a plaintiff might establish the first "disability" element.

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i).  Notably, Plaintiff has not identified a single particular impaired activity that he asserts is a major life activity.  Rather, he argues that he "would not have sought treatment by enrolling in a rehabilitation program in October 2013 had [Plaintiff] felt that his life activities were not substantially limited." (Pl.'s Opp. at PageID # 1059.) However, Plaintiff is incorrect to assume that enrollment in an alcohol abuse treatment program, alone, provides implicit evidence that major life activities have been impaired.  See Bailey, 306 F.3d at 1168 ("Evidence that alcoholics, in general, are impaired is inadequate to show a substantial limitation of one or more life activities").  See also Ingram v. Brink's, Inc., 414 F.3d 222, 229 (1st Cir. 2005) ("[S]ummary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation.").

Moreover, for purposes of the pending Motion for Summary Judgment, the parties have stipulated that "[d]uring the time that [Plaintiff] served as police chief, his ability to perform his duties was never affected or impaired by his consumption of alcohol."  (SOF at PageID # 973.) The Court must thus conclude that Plaintiff's alcoholism did not impair the substantial life function of working.  No other life activity has been put forth by Plaintiff as a particular life activity that is substantially impaired.  Therefore, Plaintiff has failed to satisfy all of the elements of the disability determination, i.e., an impairment to a major life activity that is substantial.

b.  Record of Disability

To qualify as "disabled" under § 12102(1)(B), which defines a disability as having a record of a disability, a plaintiff must show that he has been classified (or misclassified) as having an impairment that substantially limited a major life activity.  Bailey, 306 F.3d at 1169.  Plaintiff argues in his brief that the Town had a "record of his disability."  (Pl.'s Opp. at PageID # 1059.)

To support this proposition, Plaintiff points to the fact that Reed explained to Plaintiff that resources were available to him under the Town's EAP in the early months of 2013. While the record supports Plaintiff's contention that this discussion related to Young's alcohol consumption in his off-duty time, Plaintiff has not argued, nor does the record support, that this discussion, or any documentation of it,[6] related to the substantial limitation of a major life activity. See Roman-Oliveras v. Puerto Rico Elec. Power Authority, 655 F.3d 43, 49 (1st Cir. 2011) (agreeing that the plaintiff failed to state a claim based on a record of disability where he did not allege substantial limitations as a result of his impairment). See also Scheffler v. Dohman, 785 F.3d 1260, 1261-62 (8th Cir. 2015) (finding that several documented and specific instances of drinking-related offenses did not constitute a record of alcoholism).

Plaintiff has asserted that Town Council member Walsh spoke to Reed in the spring of 2013 about Young's drinking. Defendant disputes that such a discussion took place. Viewing the record in the light most favorable to Plaintiff, the Court assumes that Plaintiff could establish at trial that this discussion did occur and that such an unrecorded, undocumented conversation would constitute or give rise to a "record" in connection with the Town's employment of Young. Nonetheless, the discussion described by Walsh did not concern the impairment of a substantial life function. In fact, Walsh expressly stated that this conversation did not concern Young's ability to work or to continue serving as Chief of Police. Likewise, assuming Plaintiff could establish that at least one member of the Town Council stated that "[Young] has got to go" in the spring of 2013 and that Reed stated at that time that he had enough votes on the Town Council to remove

---

[6] The record does not indicate that any written notation was made in the Town's employment records concerning this conversation, which Reed asserts is because he did not consider the discussion to relate to an employment issue. (Reed Dep. (ECF No. 52-2) at PageID # 487.)

11

Young from his position as Chief of Police,[7] there is no connection in the record between any of these statements and an impairment, specifically alcoholism, that substantially limited a major life activity.  Finally, Defendant argues that Reed's contact with an attorney, Jonathan Goodman, in May of 2013 indicates that the Town had a record of Young's disability.  However, this fact not only fails to support a record of the substantial limitation of a major life activity, but also does not relate to an impairment, as the record reflects that Reed did not discuss Young's alcohol consumption with Goodman at that time.[8]

> c. Regarded as Disabled

Finally, Plaintiff, relying on the same facts just discussed, asserts that he was regarded by Defendant as disabled within the meaning of the ADA.  Currently, under the ADA, "An individual meets the requirement of 'being regarded as having [an impairment that can support a disability discrimination claim]' if the individual establishes that he or she has been subjected to [a prohibited action] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  See Mercado v. Puerto Rico, 814 F.3d 581, 588 (1st Cir. 2016) (explaining that following amendments to the ADA in 2008, "a plaintiff bringing a 'regarded as' claim under the ADA needs to plead and prove only that she was regarded as having a physical or mental impairment.  Such a plaintiff no longer needs to plead and prove that such impairment substantially limited one or more major life activities.")  However, no disputed issue of material fact remains that would bear upon the determination of whether the Town regarded him as disabled.

---

[7] These facts are disputed, and Reed has specifically denied that any member of the Town Council told him that they wanted Young gone prior to September 25, 2013.  (Reed Dep. (ECF No. 52-2) at PageID # 490.)

[8] Attorney Goodman was later retained by the Town to conduct an independent investigation into the events of September 25, 2013, but Plaintiff does not allege that the Town's contacts with Goodman in the context of that investigation support a record of Young's disability.

Plaintiff points to the same evidence offered as a purported record of Plaintiff's disability to support the proposition that Defendant was aware of his impairment and regarded him as impaired. However, it is not sufficient that the management of the Town may have had knowledge that Young drank alcohol during his off-duty time, or even that such consumption was arguably excessive in some cases. See Dohman, 785 F.3d at 1262 (defendant's knowledge of plaintiff's multiple DWI convictions was not sufficient to conclude that defendant regarded plaintiff as an alcoholic). Rather, Defendant must have perceived Plaintiff to be an alcoholic. Id. Even crediting all of Plaintiff's assertions of disputed facts, there is no support in the record for such a link.

First, while the record reflects that Reed and Young discussed Young's drinking in February of 2013, Reed's explanation of the Town's EAP-related services does not constitute a perception by the Town that Young was an alcoholic who was physically or mentally impaired as a result. Notably, as discussed above, no evidence exists in the record to support that any documentation was made of Young's drinking, or any related substance abuse condition, by the Town.

Furthermore, Defendant's allegations that Town Council members expressed concerns about Plaintiff in the spring of 2013, taken as true, do not support the conclusion that the Town regarded Young as impaired. The statements include opposition to Young's continued service as Chief of Police and questions about his personal life and conduct. Plaintiff has identified no statements where Reed or Town Council members identified Young as an alcoholic in Town Council meetings or in the records of the Town.[9] The statements of fact put forth by Plaintiff, if

---

[9] Plaintiff asserts that Town Council member Walsh spoke to Reed about Young's drinking in May of 2013. (PSMF at PageID # 1087.) However, while Walsh has stated that Young described himself as an alcoholic to Walsh in a conversation between Walsh and Young in May of 2013 (ECF No. 52-4 at PageID # 802), Young does not remember such a conversation and asserts that he never described himself as an alcoholic prior to October of 2013. Reed denies being told by Walsh that Young described himself as an alcoholic. Even if Young stated to Walsh that he was an alcoholic, a single statement to a single member of the Town Council would not support a conclusion that the Town perceived Young as an alcoholic.

true, tend to indicate that certain Town Council members and Reed had developed negative feelings about Young and his continued tenure as Chief of Police. However, this evidence only tangentially relates to Young's off-duty consumption of alcohol, and does not support a conclusion that the Town perceived Young to be an alcoholic.

Plaintiff has not demonstrated that he was actually disabled under the ADA, because he has not presented this Court with a genuine factual dispute as to whether Young experienced a substantial limitation to any major life activity as a result of the impairment of being an alcoholic. He has also adduced no facts to demonstrate that the Town arguably had a record of Young having such a limitation. Finally, Plaintiff has failed to demonstrate that a reasonable factfinder could conclude that Defendant regarded Plaintiff as impaired. Therefore, on this record, there is no genuine disputed issue of material fact. The Court concludes that Plaintiff cannot establish that he was disabled within the meaning of the ADA.

### 2. Defendant Did Not Discriminate against Plaintiff Because of Plaintiff's Disability

In its Motion, Defendant argues that, even if Young was disabled, the Town did not take an adverse employment action against Plaintiff on account of his disability. For the reasons explained below, the Court agrees with Defendant that Plaintiff was not subjected to an adverse employment action because of his alcoholism. Therefore, even if, on the record before the Court, Plaintiff was deemed disabled under the ADA, Defendant would still be entitled to summary judgment in its favor on Count V.

In the Complaint, Plaintiff alleges that Defendant "terminated [Plaintiff] because of his disabilities." (Compl. ¶ 81.) Framed in terms of the applicable analytical framework, Plaintiff would assert that he has made a prima facie showing that Plaintiff, a disabled employee, was subjected to the adverse employment action of termination because of his disability. See Calero-

Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 26 (1st Cir. 2004).  As an initial matter, it is not clear that Plaintiff has made even a prima facie showing that the Town's decision to terminate Young's employment was caused by Young's disability.  Plaintiff has argued, in opposition to the Motion for Summary Judgment, that "this is a case where the police chief of a town performed his job satisfactorily, but at the same time was known to be an alcoholic."  (Pl.'s Opp. at PageID # 1060.)  However, no facts, or even specific contentions, are advanced which would provide a prima facie link between Plaintiff's alleged disability and the termination of his employment.

The Court nonetheless assumes that Plaintiff has met the minimum standard of a prima facie showing of a disability discrimination claim.[10]  "Once the plaintiff has made a prima facie showing of retaliation . . . defendant must articulate a legitimate, non-retaliatory reason for its employment decision.  If the defendant meets this burden, the plaintiff must . . . show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus."  Calero-Cerezo, 355 F.3d at 26.  Defendant argues that the record reflects that it identified a non-discriminatory reason for the termination of Young's employment: that Goodman's independent investigation concluded that Young's actions towards Cake and Fickett on September 25, 2013 violated departmental canons and standards of conduct and compromised the integrity of the police department.  Plaintiff states in response that "[t]he rationale provided by the council in terminating Young is a subterfuge."  (Pl.'s Opp. at PageID # 1060.)  The basis for this contention is that, according to Plaintiff, he did not intimidate or coerce Fickett and Cake, and he did not violate any laws the night of September 25, 2013.

---

[10] As the First Circuit has previously indicated, at the summary judgment phase, analysis of this issue generally focuses on pretext and discriminatory animus.  See Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996) ("On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus.").  Critically, Plaintiff in this case has failed to develop a factual basis for finding pretext and discriminatory animus.

There are two flaws in Plaintiff's argument that prevent Plaintiff from making the necessary showing, under the burden-shifting framework, that the record could support his claim for disability discrimination.  First, while Plaintiff contends that the conclusions reached by the independent investigator and accepted by Reed and a majority of the Town Council were in fact incorrect, he has not explained why the Town Council would not have been justified in accepting those conclusions, or why claiming to accept those conclusions should be characterized as subterfuge.  To the extent that Young's interactions with Fickett and Cake while Young was off-duty may have been influenced by Young's consumption of alcohol, the Court notes that an employer "may hold an employee who . . . is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the . . . alcoholism of such employee."  42 U.S.C. § 12114(c)(4).

More fundamentally, Plaintiff has focused his efforts on attacking the fairness of the Town Council's decision-making process, but has not identified any facts which, if credited, would support the conclusion that discrimination against Young based on his disability was the actual basis for the Town's termination of Young's employment.  Plaintiff makes great efforts to document, in a disputed factual account, the Town Council members who expressed concerns about, or opposition to, Young's employment as Chief of Police prior to the events of September 25, 2013.  Plaintiff's factual assertions might support a conclusion that personal conflicts with Young existed prior to September 25, 2013, when the events occurred that are ostensibly at the center of the Town's disciplinary proceedings against Young.  However, such conflicts and any related personal animus have not been shown by Plaintiff to have resulted from Young's alleged status as a person disabled by his alcoholism.  The ADA does not protect a disabled person from

adverse employment actions based on animus, but rather from "discriminatory animus."  Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005).  It is this connection that is missing in the record and in Plaintiff's argument.

Simply put, the Court concludes that the current record does not present a trialworthy issue as to the causal connection between Plaintiff's alleged disability and the termination of his employment.  Assuming Plaintiff could meet the prima facie standard, the Court alternatively concludes that Plaintiff has failed to present evidence that makes a trialworthy issue of his contention that Defendant's stated reasons for the termination were pretext, and that the termination was a discriminatory action against Young for being an alcoholic.[11]

## B.  FMLA Retaliation Claim

Plaintiff argues that Defendant retaliated against him for his decision to seek and take leave under the FMLA by terminating his employment with the Town.  "[T]o make out a prima facie case of retaliation, a plaintiff must show that: 1) he availed himself of a protected right under the FMLA, 2) he was adversely affected by an employment decision, and 3) there was a causal connection between the protected conduct and the adverse employment action."  Pagan-Colon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 9 (1st Cir. 2012).  The parties agree that Plaintiff took medical leave pursuant to his rights under the FMLA and that Plaintiff was adversely affected by an employment decision when his Employment Agreement was terminated.  However, Defendant

---

[11] The elements and application of the MHRA disability discrimination claim (Count VI) parallel the elements of the analogous causes of action permitted under the ADA.  Under the MHRA, unlike the ADA, alcoholism is defined as a disability.  5 M.R.S.A. § 4553-A(1)(B).  However, for the purposes of determining whether a plaintiff can prove that an adverse employment action was taken because of a disability, the MHRA analysis tracks the analysis performed under the ADA.  See Dudley v. Hannaford Bros. Co., 190 F. Supp. 2d 69, 73 (D. Me. 2002), aff'd 333 F.3d 299 (1st Cir. 2003) ("Courts have interpreted the ADA and MHRA statutes as coextensive.")  The Supreme Judicial Court of Maine has stated that "[o]ur construction of the MHRA . . . has been guided by federal law . . . ."  Currie v. Indus. Sec., Inc., 915 A.2d 400, 404 (Me. 2007).  Since Defendant is entitled to summary judgment on Plaintiff's ADA disability discrimination claim because the record cannot support the conclusion that Defendant terminated Plaintiff's employment because of his alcoholism, it necessarily follows that Defendant is entitled to summary judgment on Plaintiff's MHRA claim as well.

contests Plaintiff's assertion that his medical leave bore a causal relationship to the Town's decision to fire him.

As in the ADA disability discrimination analysis, the burden-shifting framework applies to an FMLA retaliation claim where the plaintiff has not identified direct evidence of retaliation. Pagan-Colon, 697 F.3d at 9.  To make out a prima facie case of a causal connection between Young's FMLA leave and his eventual termination, Young has pointed to statements by Walsh and Garland asserting that Reed and certain of their fellow Town Council Members expressed a dismissive attitude towards Plaintiff's medical leave.  Specifically, according to Walsh, Reed described the leave as Young's way of obtaining "another paycheck." (Walsh Dep. (ECF No. 52-4) at PageID # 799.)  In a similar vein, according to Plaintiff, Reed and certain Town Council Members deemed the FMLA leave to be a tactic to prolong Young's suspension with pay, and to delay the time when the Town Council could take up the question of any disciplinary action to be taken against Young.  By Plaintiff's own admission, the administrative leave and investigation into Young's conduct predate Young's decision to take medical leave.

Given that Plaintiff's proffered evidence does not stand for the proposition that the Town was influenced by the fact that Plaintiff took an FMLA leave in reaching its decision to terminate his employment, it is doubtful that Plaintiff can satisfy this first step of a prima facie showing in the burden-shifting analysis.  Even if he could be said to meet that standard, however, Plaintiff has identified its non-retaliatory, non-discriminatory reasons for terminating Plaintiff's employment, and Plaintiff has not shown evidence of pretext that could meet his burden of proving retaliation.

Plaintiff has not identified any facts tending to suggest that the Town Council's decision to terminate Young's employment was caused or influenced by his decision to take medical leave. To the contrary, Plaintiff relies upon statements that he regards as evidence of a longstanding

desire by certain Town Council Members to fire Young, a desire that Plaintiff suggests existed prior not only to his FMLA leave, but also to the incident on September 25, 2013, and Young's ensuing suspension.  Because the record contains no credible evidence that Young's medical leave caused the Town to terminate his employment, the Motion for Summary Judgment is granted as to Count VII.[12]

## C.  Remaining Claims Arising Under Maine State Law

Plaintiff's remaining claims are his claim for review of the Town's decision to terminate Plaintiff's employment under Maine Rule 80B (Count II), his claim of breach of contract (Count III), and his claim of violation of Maine's Freedom of Access Act, 1 M.R.S.A. § 404 (Count IV). The claims focus on the contractual and procedural aspects of Plaintiff's employment and termination of Plaintiff by a municipal entity.  While the Motion for Summary Judgment presents arguments in favor of dismissal of each of these three state claims, the Court has determined as a matter of comity that those arguments are best examined by the state court now that Plaintiff's discrimination and retaliation claims are resolved.  As a general matter, when a federal court sitting in subject matter jurisdiction grants summary judgment in favor of a defendant on all federal claims, it should simply dismiss any pendent state claims to allow the plaintiff to refile them in state court.  Rivera v. Murphy, 979 F.2d 259, 264-65 (1st Cir. 1992).  Therefore, in an exercise of its informed discretion, the Court dismisses each of these claims without prejudice.

---

[12] In his Opposition to Defendant's Motion for Summary Judgment, Plaintiff seems to argue that it is Defendant's alleged violation of the FMLA that gives rise to his claim under the MHRA.  (Pl.'s Opp. at PageID # 1060-61.)  This line of argument goes beyond the scope of Plaintiff's pleadings, which explicitly predicate Count VI upon Defendant's ADA claims delineated in Count V.  (Compl. ¶ 84.)  However, even assuming that Plaintiff had adequately pled a FMLA-based claim under the MHRA, the Court would reach the same result.  Because Defendant is entitled to summary judgment on Count VII, it must also prevail on any analogous MHRA claim.

## IV.      CONCLUSION

For the reasons just stated, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 55) on Counts V-VII and DISMISSES Counts II-IV WITHOUT PREJUDICE.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 27th day of June, 2016.